IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHWEST PALLET SUPPLY CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:15-cv-50182 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| PECO PALLET, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Northwest Pallet Supply Co. ("Northwest") is a pallet recycling company that, since approximately October 2013, has been collecting and returning rented wood pallets manufactured and leased to customers by PECO Pallet, Inc. ("PECO"). In the past, PECO paid Northwest for those services pursuant to an asset recovery program ("ARP") designed to enable PECO to recover its pallets more quickly. Recently, however, PECO advised Northwest that it would no longer compensate Northwest under the terms of the ARP, instead offering a much lower rate of compensation going forward. Northwest claims that since receiving notice of the change in payment terms, it has nonetheless continued to collect and return (or attempt to return) PECO's pallets but PECO has refused to pay reasonable compensation for its services. In addition, according to Northwest, on several occasions PECO has refused to retrieve its pallets from Northwest's facilities altogether.

Northwest filed this lawsuit seeking a declaratory judgment that by allowing its customers to abandon its pallets and release them back into the martketplace, and then refusing to pick up those pallets after Northwest collects them, PECO has abandoned the pallets and thus has no ownership interest in them. Alternatively, Northwest seeks a declaration that it is entitled to

reasonable compensation for the services it provides. Northwest's amended complaint also includes Illinois common law claims for unjust enrichment, promissory estoppel, tortious interference with contract, and tortious interference with business expectancy.[1] Now before the Court is Northwest's motion for a preliminary injunction that would require PECO to pick up its pallets from Northwest's facility in Belvidere, Illinois on a daily basis—as opposed to the current practice whereby PECO picks up the pallets only when there are enough for a full truckload, on average, every nine or ten days.[2] For the reasons stated below, Northwest's motion (Dkt. No. 49) is denied.

## BACKGROUND

Commercial goods in the United States are transported on wood pallets. (Riff Aff. ¶ 2, Pl. Memo in Support of Mot. for Prelim. Inj., Ex. A, Dkt. No. 50-1.) As a general matter, product manufacturers use three types of wood pallets to ship their goods: (1) standard white wood pallets, (2) PECO-manufactured wood pallets, which are painted a distinctive red color and bear the PECO logo, and (3) wood pallets manufactured by another industry competitor, which are painted a distinctive blue color. (*Id.* ¶ 2.)

The pallet industry utilizes two different methods of providing wood pallets to customers: the sale model and the lease model. (*Id.* ¶ 9.) Traditionally, manufacturers have purchased standard white wood pallets under the sale model. (*Id.*) Under that model, pallet suppliers sell

---

[1] PECO has brought its own suit, claiming that Northwest has refused or failed to return certain of its pallets and that many of the pallets Northwest has returned have been physically damaged. *See PECO Pallet, Inc. v. Northwest Pallet Supply Co.*, Case No. 1:15-cv-06811 (N.D. Ill.). PECO's first amended complaint asserts common law causes of action for replevin, conversion, detinue, trespass to chattels, and negligence.

[2] Northwest recently informed the Court that, since approximately March 15, 2016, PECO has ceased picking up its pallets altogether. This Memorandum Opinion and Order is based on the facts as they were at the time Northwest filed its motion for a preliminary injunction and thus does not necessarily preclude Northwest from seeking subsequent preliminary relief based on changed circumstances. However, if Northwest chooses to do so, it should be cognizant of the principles and findings detailed here.

white wood pallets for a set price, after which ownership transfers, and there is no obligation to return the pallets once they are shipped to distributors or retailers. (*Id.* ¶ 10.) As a result, retailers at the end of the distribution process end up with an accumulation of white wood pallets at their facilities. (*Id.* ¶ 11.) More recently, PECO and at least one other manufacturer have begun supplying wood pallets of a higher quality than the standard white wood pallets. (*Id*. ¶ 16) Under the lease model, these more durable wood pallets are rented for a fee and ultimately returned to their owner (in this case, PECO). (*Id.* ¶¶ 16-17.) According to Northwest, not all of PECO's lessee-customers or downstream retailers are obligated to return PECO's pallets. (*Id.* ¶ 19.) As a result, retailers and pallet recyclers end up with pallets left behind by PECO's customers without any obligation to return them. (*Id.* ¶ 21.)

In October 2013, PECO rolled out its ARP, which, as noted above, was designed to enable PECO to recover its pallets from retailers and recyclers more quickly. (*Id*. ¶¶ 24-25.) Under the ARP, PECO offered to pay pallet recyclers $2.25 for every pallet returned to PECO or $1.25 for every pallet picked up by PECO. (Am. Compl., Ex. 1, Dkt. No. 8-1.) Specifically, PECO represented to participating pallet recyclers as follows:

> If you receive a large number of PECO pallets and want to return them to our service center in your area, PECO will compensate you at the rate of $2.25 per pallet plus a Fuel Service Charge . . . If you only receive a small quantity of PECO pallets, our dedicated fleet is available to pick up the pallets from your facility. PECO will compensate you at the rate of $1.25 per pallet, loaded onto PECO's truck.

(*Id.*) Northwest claims that, relying on PECO's ARP, it entered into agreements with several retailers to purchase at a fixed cost all pallets—including white wood and rented PECO pallets— that accumulate at the retailers' facilities. (Riff Aff. ¶¶ 4-5, Pl. Memo in Support of Mot. for Prelim. Inj., Ex. A, Dkt. No. 50-1; *see also* Am. Compl. ¶¶ 12-13, Dkt. No. 8.) Northwest began collecting, sorting, and returning PECO's pallets, which were included in the pallets Northwest

3

purchased in bulk from its retail partners, for the compensation offered in the ARP. (Am. Compl. ¶¶ 14-15, 39, Dkt. No. 8.) Until recently, PECO paid Northwest accordingly. (*Id.* ¶ 15.)

Then, in a letter dated May 12, 2015, PECO informed Northwest that it would no longer pay for Northwest's services at the rate offered under the ARP. (Riff Aff. ¶ 26, Pl. Memo in Support of Mot. for Prelim. Inj., Ex. A, Dkt. No. 50-1.) Instead, PECO offered to pay $0.20 for each pallet Northwest returned going forward. (*Id.*) Northwest rejected PECO's offer. (*Id.* ¶ 27.) Nonetheless, Northwest continued, and still continues, to purchase pallets pursuant to its contracts with its retail partners. (*Id.* ¶ 29.)

Northwest claims that the PECO pallets received at its Belvidere facility on a daily basis accumulate so rapidly that storing the pallets for longer than 24 hours significantly interferes with its ability to operate its white wood pallet business at full capacity due to limited dock and storage space. (*Id.* ¶¶ 29-30.) It further asserts that, if forced to continue collecting, sorting, and storing PECO's pallets for the minimal compensation offered by PECO, it may need to raise the prices it charges for the re-sale of white wood pallets. (*Id.* ¶ 32.) In the meantime, according to Northwest, PECO has reduced its operating costs by essentially shifting those costs to Northwest, which has made PECO's rented wood pallets a more cost-effective option for customers. (*Id.*) For those reasons, Northwest has demanded that PECO pick up its pallets from the Belvidere facility on a daily basis. (*Id.* ¶ 34.) PECO has refused, asserting that it does not make economic sense to pick up its pallets until a full truckload has accumulated. (*Id.*) Northwest now asks the Court to enter a preliminary injunction requiring PECO to pick up its pallets from Belvidere on a daily basis or else its pallets will be considered abandoned.

**DISCUSSION**

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotations and citation omitted). Motions for mandatory injunctions, which compel the non-moving party to take affirmative action, are viewed cautiously and issued sparingly. *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

In deciding whether to grant preliminary injunctive relief, a court must, as a threshold matter, determine whether the moving party has demonstrated: (1) some likelihood of success on the merits of the underlying claims; (2) the absence of an adequate remedy at law; and (3) the suffering of irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (internal citations omitted). If the moving party meets those threshold requirements, the court then must balance the harm to the non-moving party if preliminary relief is granted against the harm to the moving party if relief is denied, and also consider the consequences to the public interest of granting or denying relief. *Id.* at 11-12 (internal citations omitted). The equitable balancing analysis employed by the Seventh Circuit involves a "sliding scale" approach, "weighting harm to a party by the merit of his case." *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007).

**I. Character of the Preliminary Relief Sought**

As an initial matter, Northwest's request for a preliminary injunction is immediately suspect because the preliminary relief that Northwest seeks is fundamentally different from that

sought in its complaint. The Supreme Court has explained that a preliminary injunction is "appropriate to grant intermediate relief of the same character as that which may be granted finally," but is not appropriate where the injunction "deals with a matter lying wholly outside the issues in the suit." *De Beers Consol. Mines v. United States,* 325 U.S. 212, 220 (1945). *See also Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("Preliminary injunctions are a tool appropriately used only to grant intermediate relief of the same character as that which may be granted finally.") (internal quotations, citation, and emphasis omitted); *Tekena USA, LLC v. Fisher*, No. 06 C 1558, 2006 WL 2536631, at *4 (N.D. Ill. Aug. 31, 2006) (same). At least one Circuit has interpreted the Supreme Court's guidance to mean that "an injunction in the traditional sense must be an order that gives some or all of the substantive relief sought in the complaint." *Alabama*, 424 F.3d at 1128.

Here, Northwest asks the Court to "level the competitive playing field" by imposing an additional cost—the cost of daily pickups—to counteract PECO's savings on Northwest's return services and thereby prevent PECO from lowering its prices and competing more effectively in the market. (Pl. Mot. for Prelim. Inj. ¶ 2, Dkt. No. 49.) But the cost that Northwest would like to see imposed is of an entirely different character than the relief sought in this lawsuit. In its amended complaint, Northwest seeks ownership of PECO's pallets or reasonable compensation for the services that it has provided to PECO's benefit. Neither of those two potential outcomes is related to the preliminary relief requested in the present motion. An ultimate determination that Northwest is entitled to compensation from PECO would not affect how often PECO picks up its pallets from Northwest's facilities. And if the Court were to find that PECO has abandoned its pallets (and is therefore not entitled to their return), PECO would not pick up its pallets at all, in which case the preliminary injunction sought by Northwest would be inconsistent with the relief

sought in its underlying lawsuit. This observation alone suggests that Northwest's motion should be denied. Nonetheless, the Court will proceed to consider each of the traditional preliminary injunction factors.

## II. Likelihood of Success on the Merits

Northwest has brought its declaratory judgment action against PECO alongside state common law claims for unjust enrichment, promissory estoppel, tortious interference with contract, and tortious interference with business expectancy. The Court finds that Northwest has shown some likelihood of success on the merits with respect to at least the unjust enrichment and promissory estoppel claims.

To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must show that "a defendant has unjustly retained a benefit to the plaintiff's detriment and . . . the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (internal quotations and citation omitted). "The essence of the cause of action is that one party [has been] enriched, and it would be unjust for that party to retain the enrichment." *Id.* (internal quotations and citation omitted).

Here, Northwest has made a sufficient showing that PECO has unjustly retained the benefit of Northwest's services to its detriment, at least with respect to the PECO pallets that Northwest collected, sorted, stored, or returned prior to its receipt of the May 12, 2015 letter and for which services PECO has allegedly refused to compensate Northwest pursuant to the terms of the ARP. Furthermore, with respect to pallets that PECO has allegedly refused to pick up from Northwest's facilities, a factfinder might find it unjust that PECO is benefiting from free storage to Northwest's detriment. And while the case cited by Northwest, *CHEP USA v. Mock Pallet Co.*,

7

138 Fed. Appx. 229 (11th Cir. 2005), is not binding on this Court, it does weigh in Northwest's favor given the similarity of the facts and the elements of unjust enrichment under Illinois and Georgia law.³ *See, e.g.*, *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 Fed. Appx. 849, 856 (11th Cir. 2013) (Unjust enrichment exists "where the party sought to be charged has been conferred a benefit by the [claimant] which the benefitted party equitably ought to return or compensate for.") (quoting *Sampson v. Haywire Ventures, Inc.*, 668 S.E.2d 286, 288 (Ga. App. Ct. 2008)).

The parties' briefing for the present motion does not specifically address Northwest's promissory estoppel claim, but the Court finds some likelihood of success on that claim as well. To establish promissory estoppel under Illinois law, "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant[]; and (4) plaintiff relied on the promise to its detriment." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009)).

Northwest claims that the ARP was an unambiguous promise by PECO upon which it reasonably relied in entering into agreements with retailers to purchase all of their pallets, including PECO pallets, and in performing collection, sorting, and return services to PECO's benefit. Northwest further argues that such reliance was expected and foreseeable by PECO. For purposes of obtaining a preliminary injunction, Northwest does not have to prove its claims; rather, it must only show that it has some likelihood of success. It has done so here.

Specifically, Northwest has made a sufficient showing that PECO expected the pallet recyclers to which it offered payment pursuant to the ARP to rely on that promise and to begin

---

³ In *Chep USA*, the Eleventh Circuit, applying Georgia law, held that the district court's grant of summary judgment in favor of the pallet recycler on its unjust enrichment claim was appropriate because equitable considerations dictated that the pallet lessor reimburse the pallet recycler for the benefit it received from the pallet recycler's handling and storage of its pallets. *See Chep USA*, 138 Fed. Appx. at 235.

performing return services. To the extent Northwest continued providing services up until its receipt of PECO's May 12, 2015 letter, but has not been compensated for such services, Northwest's reliance on PECO's promise has been to its detriment. While Northwest will likely have greater difficulty proving that PECO should have foreseen that it would enter into agreements with retailers without taking measures to protect itself against the risk of PECO revoking or changing the terms of its ARP, failure to make such a showing may not defeat Northwest's claim in its entirety.

### III.  Irreparable Harm and Lack of an Adequate Remedy at Law

As PECO notes, the requirements of irreparable harm and lack of an adequate remedy at law tend to merge, *see Kreg Therapeutics, Inc. v. VitalGo, Inc.*, No. 11-cv-6771, 2011 WL 5325545, at *5 (N.D. Ill. Nov. 3, 2011) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)), as "[a]n injury is 'irreparable' when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard." *Id.* (citing *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997)).

Northwest claims that it has suffered irreparable harm as a result of being forced to sort and store PECO's pallets while waiting for a full truckload to accumulate. This purported harm includes: (1) increased exposure to liability with regard to PECO's claim that Northwest is causing physical damage to its pallets; (2) interference with Northwest's ability to conduct other income-generating operations, resulting in loss of customer goodwill and future business; and (3) PECO's retention of a competitive advantage. More specifically, Northwest asserts that storing PECO's pallets for more than 24 hours, in addition to increasing the possibility that inadvertent damage could occur, interferes with its ability to operate its white wood pallet business at full

capacity. This, in turn, limits the number of white wood pallets that Northwest is able to supply to the market, negatively impacts its goodwill with existing customers, and reduces the possibility of attracting new customers. With respect to PECO's alleged competitive advantage, Northwest claims that, having ceased paying Northwest reasonable compensation for its services, PECO is able to reduce its costs, essentially shifting those costs to Northwest. As a result, PECO is able to gain market share by offering its pallets at costs lower than it otherwise would be able to offer were it not receiving Northwest's services for free.

Despite its efforts, Northwest has failed to make a persuasive showing that it is suffering irreparable harm as a result of having to store a few hundred PECO pallets for an additional, at most, ten days. The Court is not persuaded that the burden of storing the pallets interferes with Northwest's business to the extent claimed. As PECO points out, Northwest previously was able to store nearly 17,000 pallets at its Belvidere facility for a period of months without any apparent disruption to its business. This calls into serious doubt Northwest's complaints of limited storage space and resultant inability to operate its white wood pallet business at full capacity. At a recent court hearing on this matter, Northwest's counsel explained that many of the 17,000 pallets were stored outside, which is something Northwest can no longer do without increasing its exposure to liability for physical damage caused to the pallets. But any increased possibility of inadvertent damage to PECO's pallets can be addressed through an award of money damages in the parties' underlying litigation. Likewise, Northwest's argument that PECO has improperly shifted the costs of storage to Northwest asserts an economic harm that can be quantified and addressed through a damages award. In short, Northwest has not made a persuasive showing that storing a few hundred pallets for nine to ten more days than it would like has significantly disrupted its business

or involves a significantly higher risk of inadvertent damage than 24-hour storage—at least not to the point of justifying the preliminary relief requested.

Even assuming that the lack of daily pickups imposes the sort of extreme burden that Northwest claims it does, Northwest has not shown that the goodwill of customers of its white wood pallet business has been negatively impacted. Indeed, there is no evidence that anything has changed from the perspective of Northwest's existing customers. Storing PECO's pallets at the expense of its white wood pallet business has been the norm for years as, pursuant to its agreements with retailers, Northwest is required to collect—and therefore sort and store for some period of time—PECO's pallets. The only difference is that Northwest no longer receives compensation from PECO for those services. So while the costs to Northwest have changed, the services being provided to its customers have not.

To the extent Northwest's position rests on the argument that its increased costs have limited the number of white wood pallets it is able to supply to the market, Northwest has failed to make a persuasive showing that such is the case. Northwest has not presented the Court with any detail regarding what those increased costs are, how exactly those costs have reduced the number of white wood pallets Northwest is able to supply, what the actual difference is in the number of white wood pallets supplied, or how that difference has actually impacted goodwill with existing customers and reduced the possibility of attracting new customers. While loss of customer goodwill and future business may in some instances constitute irreparable harm not adequately compensable by an award of money damages, it must be shown that such losses are likely, not merely possible, in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Northwest has not made that showing. Moreover, as discussed further below, Northwest has failed to demonstrate that the absence of an injunction is the problem—that is, that

the injunctive relief requested would prevent the purported loss of customer goodwill and future business. *See Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 595 (7th Cir. 1986) ("The question is not whether there was an actual loss but whether there was an impending loss that the preliminary injunction prevented, how great it was, and whether it could have been made up by a judgment for damages after trial.")

The crux of Northwest's irreparable harm argument is that PECO has cut its own costs by refusing to pay Northwest for its services, which has enabled PECO to lower its prices and thereby gain an unfair economic and competitive advantage in the marketplace.[4] But it is not even clear whether PECO is in fact able to lease, or has been offering to lease, its pallets at costs lower than those previously offered. Northwest does not specifically claim that the price of PECO's pallets has dropped since May 2015, just that PECO is getting its pallets back without paying any money, which allows it to compete more effectively in the market. Northwest points only to a single example of PECO taking over one of its customer accounts, and asserts that it "has reason to believe" the primary reason this occurred is because PECO was able to offer its pallets at a price lower than Northwest's white wood pallets. (Pl. Reply in Support of Mot. for Prelim. Inj. at 9-10, Dkt. No. 56.) However, it could simply be that the market is moving away from traditional white wood pallets toward rented wood pallets or that the particular customer referenced in Northwest's reply brief decided it prefers the higher-quality rented wood pallets. Moreover, it is questionable whether receiving Northwest's services for free actually gives PECO a competitive advantage significant enough to affect its pricing. Finally, as to its own pricing, Northwest merely

---

[4] Northwest's reply brief states that "while the amount of time [Northwest] is forced to store up to 540 pallets significantly interferes with its business to the point where it is impacting its goodwill with its customers and is detrimental to [Northwest] being able to provide its services to its paying customers, the *indisputable* irreparable harm being suffered by [Northwest] is PECO's ability to gain an unfair competitive advantage." (Pl. Reply in Support of Mot. for Prelim. Inj. at 8-9, Dkt. No. 56 (emphasis added).)

speculates that it "*may* need to raise the prices it charges for white wood pallets," which would make it less competitive with PECO and other pallet manufacturers. (Pl. Memo in Support of Mot. for Prelim. Inj. at 9, Dkt. No. 50 (emphasis added).) Such speculation cannot justify the extreme remedy sought here.

Regardless of whether PECO has in fact gained an unfair competitive advantage, the costs Northwest is incurring are a direct result of the agreements into which Northwest entered with its retail partners and under which Northwest must collect all of the retailers' pallets, including any PECO pallets. Forcing PECO to pick up its pallets on a daily basis would not relieve Northwest of those obligations; it would simply place an additional cost on PECO. Northwest assumed the risk of the situation it is now facing by entering into agreements with retailers that would be profitable only so long as PECO continued to compensate Northwest according to the terms of the ARP, without having any assurance that PECO would not rescind or modify the ARP.

As the Court sees no potential outcome that determines how often PECO picks up its pallets, and no real relationship between the frequency with which PECO does so and Northwest's alleged irreparable competitive harm, Northwest's motion must be denied. *See Wheaton Coll. v. Burwell*, 791 F.3d 792, 801 (7th Cir. 2015) (affirming the denial of a preliminary injunction where the relief sought had no connection to plaintiff's claims). *See also Ohio Art Co. v Lewis Galoob Toys, Inc.*, 799 F. Supp. 870, 887 (N.D. Ill. 1992) ("Injunctive relief is not available where a party is simply trying to obtain a commercial advantage.") (internal quotations and citation omitted).

Finally, just as the alleged increase in exposure to liability for physical damage to PECO's pallets can be taken into account in allocating damages in the parties' underlying lawsuits, so too can any harm to Northwest's business proven to have been caused by wrongful conduct on the part of PECO. An award of money damages for Northwest's claimed commercial disadvantage

13

resulting from PECO's refusal to pay reasonable compensation is not only adequate, it is what Northwest seeks in its underlying lawsuit. According to Northwest, "PECO's proffer that this case is all about money damages is belied by the equitable nature of [Northwest's] claims." (Pl. Reply in Support of Mot. for Prelim. Inj. at 7, Dkt. No. 56.) But this argument ignores the fact that, aside from its request for a declaration that PECO has no ownership interest in the pallets it allegedly abandoned, Northwest's claims all seek only money damages.

Northwest claims it cannot be made whole by an award of money damages because "the longer PECO is able to obtain these services for free during the pendency of this litigation, the more it will continue to gain an unfair competitive advantage in the marketplace at [Northwest's] irreparable expense." (*Id.* at 8.) But this circular argument fails to show how an award of damages will be "seriously deficient as a remedy for the harm suffered." *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (internal citations omitted). The Seventh Circuit has held that a damages remedy may be inadequate for any of the following reasons: (1) the award may come too late to save the plaintiff's business; (2) the plaintiff may not be able to finance his lawsuit; (3) damages may be unobtainable from the defendant; or (4) the nature of the plaintiff's loss may make damages very difficult to calculate. *See id.* Northwest has failed to show that any of those four reasons applies here. In sum, the Court finds that any non-speculative loss of business for which PECO should be held liable is capable of calculation and adequately compensated by money damages. This is simply not a case where "it is virtually impossible to ascertain the precise economic consequences." *EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 845 (N.D. Ill. 2011) (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001).

### IV. Balance of Harms

Since Northwest cannot demonstrate irreparable harm, the Court must deny the requested injunction. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (if the moving party fails to establish either some likelihood of success on the merits, or that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied, a court's inquiry is over and the injunction must be denied). Only when the moving party clears those thresholds need the court proceed to the balance of harms analysis. *See id.*; *see also Girl Scouts of Manitou Council, Inc,*, 549 F.3d at 1086. However, the Seventh Circuit has advised that where a district court decides the moving party has not satisfied one of the threshold requirements, the court should nevertheless conduct at least a cursory examination of each preliminary injunction consideration, including the balance of harms. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1087.

In this second phase of the preliminary injunction analysis, the Court must weigh the irreparable harm that Northwest would endure without the protection of the preliminary injunction against any irreparable harm PECO would suffer if the Court were to grant the requested relief. *See id.* at 1086 (citing *Abbott Labs.*, 971 F.2d at 11-12). In doing so, the Court uses a sliding scale approach: the more likely Northwest is to succeed on its underlying claims, the less heavily the balance of harms must weigh in its favor; the less likely Northwest is to succeed, the more heavily the balance of harms must weigh in its favor. *See id.* (internal citations omitted). Here, the Court agrees with PECO that the burden on Northwest of storing a few hundred pallets for ten days is outweighed by the burden on PECO of having to pick up its pallets on a daily basis. The speculative nature of the irreparable harm alleged by Northwest further tips the scale in PECO's

favor. And while Northwest does have some likelihood of success on the merits of its underlying claims, that likelihood is not so great so as to tip the scale in the other direction.

## CONCLUSION

For the reasons stated above, Northwest's motion for a preliminary injunction (Dkt. No. 49) is DENIED.

ENTERED:

Dated: May 13, 2016

_____
Andrea R. Wood
United States District Judge